BLAKE G. HALL, ESQ.
SAM L. ANGELL, ESQ.
DILLON S. ERICKSON, ESQ.
HALL ANGELL & ASSOCIATES, LLP
1075 S Utah Avenue, Suite 150
Idaho Falls, Idaho 83402
Telephone (208) 522-3003
Fax (208) 621-3008
*ISB Nos. 2434, 7012 and 10312*
bgh@hasattorneys.com
sla@hasattorneys.com
dse@hasattorneys.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINDSEY YEAMAN, an individual, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF BURLEY, an Idaho municipal corporation; and DEE HODGE, an individual, <br><br> Defendant. | Case No. 4:21-cv-345 <br><br> **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendants, CITY OF BURLEY and DEE HODGE, by and through counsel of record, HALL ANGELL & ASSOCIATES, LLP, submit this Memorandum in Support of Motion for Summary Judgment as follows:

## **INTRODUCTION**

The City of Burley employed Plaintiff Lindsey Yeaman as a laboratory technician in the wastewater department from 2014 until mid-2018. She was promoted to pretreatment coordinator in July 2018. After that, Plaintiff's supervisor, Dee Hodge,

observed that her work performance declined to the point where it was no longer acceptable. By November 2019, Mr. Hodge decided to terminate Plaintiff's employment but wanted to wait until after the holidays to officially start the process. In late January 2020, Mr. Hodge moved forward with terminating Plaintiff's employment, with the termination being finalized on February 13, 2020.

In this lawsuit, Plaintiff now claims her termination was a result of sexual harassment, a hostile work environment, and/or discrimination. Plaintiff has named both the City of Burley and Dee Hodge as defendants in this case. However, Plaintiff does not bring any Title VII claims directly against Dee Hodge.[1] Plaintiff's amended complaint alleges sexual harassment/hostile work environment (Section III), discrimination/sexual harassment (Section IV), and retaliation (Sections V and VI) against the City only. As discussed below, Plaintiff's claims fail because she did not bring her claims within 300 days of the alleged sexual harassment, the City is entitled to the *Faragher-Ellerth* defense, and the state law claims are barred by the statute of limitations. The Court should therefore grant Defendants' motion and dismiss this case.

**ARGUMENT**

I. **PLAINTIFF'S SEXUAL HARASSMENT/DISCRIMINATION CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.**

Plaintiff's claims against the City fail because Hodge did not engage in any actionable discrimination within the 300-day period before Plaintiff filed a charge of discrimination with the Idaho Human Rights Commission. "Title VII provides that an employee who wishes to bring a civil action for gender discrimination must file a claim

---

[1] The only allegations Plaintiff brings specifically against Dee Hodge are state law claims for intentional and negligent infliction of emotional distress. Amended Complaint, Sections VII and VIII.

with the EEOC no later than 300 days after the alleged discrimination occurred." *Beck v. Battelle Energy All., LLC*, No. 4:12-CV-00086-BLW, 2013 WL 587902, at *2 (D. Idaho Feb. 13, 2013). However, if "an act contributing to [a hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morehouse v. Idaho State Dep't of Corr.*, No. 3:11-CV-00167-BLW, 2013 WL 5798702, at *3 (D. Idaho Oct. 28, 2013) (*quoting Nat'l R.R. Passenger Co. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).

Here, Plaintiff's claims are based on events that allegedly occurred more than 300 days before she filed a charge of discrimination with the Idaho Human Rights Commission. Plaintiff submitted her charge to the Idaho Human Rights Commission on April 29, 2020. Any claim based on events that occurred before July 4, 2019 (300 days before April 29, 2020) is barred. In her complaint, Plaintiff does not clearly identify dates on which events occurred. She generally claims the alleged sexual harassment occurred between 2015 and 2018. *Amended Complaint*, ¶10.

During her deposition, Plaintiff admitted that the behavior she claims was sexual harassment ended in July 2018. *Declaration of Counsel*, Ex. A, Transcript of Deposition of Plaintiff, p. 61, ll. 3–5, p. 70, ll. 11–23. Although Defendants deny that any sexual harassment occurred, Plaintiff's admission that such conduct ended in 2018 is fatal to her claims. The fact that the alleged conduct ended in 2018 shows that Plaintiff did not suffer an ongoing hostile work environment based on sexual harassment.

Throughout 2019 and 2020, Plaintiff's work performance was failing. During that time, she claims that Hodge yelled at her, threatened to fire her, deleted/changed her work

on an office computer, *etc. Amended Complaint*, ¶ 13. That behavior is vastly different from alleged sexual harassment, and cannot form the basis of a sexual harassment/hostile work environment/ claim. After July 4, 2019, Plaintiff has not alleged or raised any issue of fact that could support a Title VII claim. Plaintiff's claims are therefore barred, and the Court should dismiss them.

**II.      PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE FOR HER CLAIMS UNDER TITLE VII AND THE CITY IS ENTITLED TO THE *FARAGHER-ELLERTH* DEFENSE.**

To the extent they are not dismissed in their entirety, Plaintiff's Title VII claims can only be based on conduct that occurred after July 4, 2019. Hodge's conduct after July 4, 2019, did not violate Title VII and was not severe or pervasive enough to constitute a hostile work environment. Even if Plaintiff did experience improper behavior, the City is entitled to the *Faragher-Ellerth* defense because she never reported any alleged sexual harassment or sexual discrimination to the City. A prima facie hostile work environment claim requires a plaintiff "to demonstrate that (1) she was subjected to verbal or physical harassment due to her gender; (2) the harassment was unwelcome; and (3) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive work environment." *French v. Idaho State AFL-CIO*, 164 F. Supp. 3d 1205, 1216 (D. Idaho 2016) (internal citations omitted). "[A]n employer is vicariously liable for actionable discrimination caused by a supervisor …." *Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 118 S. Ct. 2275, 2279, 141 L. Ed. 2d 662 (1998). However, an employer can raise an affirmative defense consisting of two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) that the plaintiff unreasonably failed to take advantage of any preventive

or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998). Evidence that an employee failed to utilize the employer's complaint procedure "will normally suffice to satisfy the employer's burden under the second element of the defense." *Id.*

In this case, Plaintiff alleges a hostile work environment with no tangible job detriment. Her allegations fall short of making a prima facie showing of conduct that was sufficiently severe or pervasive to constitute a hostile work environment. Plaintiff admitted that after July 2018, she did not experience any unwanted/unwelcome touching, requests from Hodge to go on rides in his truck, or any other inappropriate sexual innuendo from Hodge. *Declaration of Counsel*, Ex. A. The acts Plaintiff complains of that occurred after July 4, 2019, were not sufficiently severe or pervasive to constitute a hostile work environment. Plaintiff's amended complaint contains allegations of conduct that occurred after July 4, 2019, including the following:

- Hodge required Yeaman to run all of the labs for a co-worker who was out on maternity leave. ¶ 22.

- The City and Hodge did not provide Yeaman with the necessary training to perform her duties as Pretreatment Coordinator. ¶ 24

- Hodge informed Yeaman that he changed his mind and he determined the City was not going to pay for a qualified professional to write the initial necessary permit and other documents. ¶ 27.

- Hodge informed Yeaman that she would be required to write the new permits …. ¶ 28.

These allegations do not rise to the level of harassment or discrimination of any type. Moreover, during Plaintiff's entire deposition, she did not describe a single instance of sexual harassment that occurred after July 4, 2019. From the time Plaintiff began working as pretreatment coordinator until her termination, Dee Hodge's comments were strictly related to Plaintiff's job duties and performance. Plaintiff's allegations simply do not constitute any Title VII claim and must be dismissed.

However, if the Court somehow determines that Plaintiff presents a prima facie case, summary judgment in favor of Defendants is still appropriate because the City had an adequate anti-harassment policy in place and Plaintiff unreasonably failed to utilize the policy. The City's policy includes a discrimination and harassment policy that prohibits such conduct and gives various examples of prohibited conduct. It also sets forth a detailed complaint process. *Declaration of Mark Mitton*, Ex. A. The policy provides that a

> person who feels harassed, discriminated or retaliated against may initiate the complaint process by filing a written and signed complaint with the City Administrator, City Clerk, Department head or Human Resource Analyst. No formal action will be taken against any person under this policy unless a written and signed complaint is on file containing sufficient details to allow the City Administrator to determine if the policy may have been violated.

*Id.* The policy then describes the responsibilities of the City in responding to the complaint. *Id.* The City's policy clearly shows that it made reasonable efforts to prevent sexually harassing behavior and is sufficient to satisfy the first element of the affirmative defense.

The City also satisfies the second element of the affirmative defense because Plaintiff never reported the alleged sexual harassment. Plaintiff admits that when she went to the Director of Human Resources, Carol Anderson, on January 6, 2020, to lodge a

complaint against Dee Hodge she did not report that Hodge had sexually harassed her, touched her, or reached down her shirt. *Declaration of Counsel*, Ex. B, Transcript of Deposition of Plaintiff, p. 68, ll. 6–13; p. 98, ll. 14–17. The only issues she reported to Ms. Anderson were issues with time off, unpaid leave, and being forced to take a smoking cessation class. *Id.* at Ex. C, p. 68, ll. 14–24; and p. 96, ll. 19–p. 98. l. 13. She also did not report any sexual harassment to the city administrator, Mark Mitton. *Id.* at Ex. D, p. 69, ll. 1–3.

Plaintiff had yet another opportunity to report sexual harassment at the final hearing on her proposed termination but failed to do so. On February 10, 2020, Plaintiff, accompanied by her coworker Dan Pherigo, met with Ms. Anderson and Mr. Hodge to discuss the proposed termination of her employment. *Id.* at Ex. E, p. 101, ll. 2–8. At that hearing, Plaintiff was permitted to say what she wanted to rebut the proposed termination. *Id.* The meeting lasted nearly 90 minutes and at no point did Plaintiff ever mention any alleged sexual harassment. *Declaration of Carol Anderson*, ¶ 7.

Plaintiff had ample opportunity to report the alleged sexual harassment she describes in her complaint but she failed to do so. The City is therefore entitled to the *Faragher-Ellerth* defense and the Court should dismiss Plaintiff's claims.

## III. PLAINTIFF'S CLAIM FOR RETALIATION FAILS BECAUSE SHE DID NOT ENGAGE IN A PROTECTED ACTIVITY.

Plaintiff did not engage in a protected activity because she did not report an unlawful employment practice. To prevail on a claim for retaliation, Plaintiff must show that "(1) she engaged in a protected activity, (2) she suffered an adverse employment decision, and (3) there was a causal link between the two." *Dickinson v. Edward D. Jones & Co., L.P.*, No. 4:14-CV-00397-REB, 2016 WL 4500777, at *7 (D. Idaho Aug. 26,

2016). "An employee engages in protected activity when she opposes an employment practice that either violates Title VII or that the employee reasonably believes violates the law." *Mendez v. St. Alphonsus Reg'l Med. Ctr., Inc.*, No. 1:12-CV-00026-EJL, 2014 WL 6077608, at *27 (D. Idaho Nov. 13, 2014) (internal citation omitted).

"The burden shifting of McDonnell Douglas is said to apply to the legal analysis of retaliation claims." *Herrera v. State of Idaho*, 2005 WL 2367540, at *3 (D. Idaho Sept. 27, 2005). Under *McDonnell*, if a plaintiff succeeds in establishing a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nonretaliatory reason for taking the alleged retaliatory actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802.

If the defendant employer meets that burden, plaintiff must demonstrate that the reasons given by the employer are pretextual. *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). However, the evidence of pretext must be both specific and substantial to overcome the legitimate reasons put forth by the employer. *E.g., Bergene v. Salt River Project Improvement & Power Dist.*, 272 F.3d 1136, 1143 (9th Cir. 2001).

Here, Plaintiff's report to Carol Anderson was not a protected activity. Plaintiff met with Ms. Anderson on January 6, 2020. *Anderson Declaration*, ¶3. However, she did not report any employment practice that violated Title VII. *Id.* Plaintiff admits she did not report any alleged sexual harassment to the City. *Declaration of Counsel*, Ex. F, Transcript of Deposition of Plaintiff, p. 45, ll. 8–25 and pp. 46–47. She only reported intimidation, bullying, sabotaging her work, not giving correct information or withholding information, different rules for her only, and isolation. *Id.* at Ex. C. Those actions are not prohibited by

Title VII and Plaintiff's retaliation claim must fail because she did not engage in a protected activity.

Further, the City terminated Plaintiff's employment based on legitimate, non-retaliatory reasons. Plaintiff began working as pretreatment coordinator in July 2018. Dee Hodge observed that Plaintiff struggled with the responsibilities of her new position. *Declaration of Dee Hodge*, ¶ 4. The pretreatment coordinator position requires adaptability, especially as circumstances in various water users occur and as regulations change. *Id.* Plaintiff struggled with those changes and failed to complete the required tasks satisfactorily. *Id.* For example, Hodge was aware that Plaintiff had not performed any non-domestic inspections in 2019. *Id.*, at Ex. A. She also failed to publish the 2019 violations and the corresponding names of the industrial users. *Id.* In July 2019, Plaintiff had informed Hodge that she would have the necessary documents ready for an inspection in September but by late August, Plaintiff informed Hodge that she could not meet the deadline. Hodge had to ask the Idaho Department of Environmental Quality ("DEQ") to reschedule to inspection. *Id.* After the inspection, the DEQ requested additional information from Plaintiff. *Id.* By mid-December, Plaintiff had not sent the information to the DEQ. *Id.*

In November 2019, Hodge had made the decision to begin the process to terminate Plaintiff's employment and informed City Administrator Mark Mitton of this decision. *Hodge Declaration*. However, Hodge waited until January 2020 to begin the process because he did not want to terminate Plaintiff's employment before the holidays. *Id.*

On January 31, 2020, Hodge signed and delivered a letter of proposed termination to Plaintiff. *Id.*, Ex. A. The notice stated that the proposed termination was due to

Plaintiff's failure to meet work performance standards and requirements, willful or negligent disobedience, incompetence, inefficiency, and inexcusable neglect of duties. *Id.* The Notice also placed Plaintiff on paid suspension "pending the outcome of the opportunity to be heard, …" with the hearing scheduled for February 10, 2020. *Id.*

At the hearing, Plaintiff was given the opportunity to present any argument or evidence to counter the proposed termination. Plaintiff's defense at her hearing was limited to the allegations she brought up to Ms. Anderson on January 6, 2020, as well as attempting to excuse her diminishing work performance. *Anderson Declaration*, ¶ 7. She did not discuss any alleged sexual harassment. *Id.*

After the hearing, Mr. Hodge elected to terminate Plaintiff's employment. *Hodge Declaration*. Mr. Hodge and Ms. Anderson drove to Plaintiff's house to deliver the Notice of Termination to her. Ms. Anderson told Plaintiff that she had a right to appeal her termination to the Mayor. *Anderson Declaration*, ¶ 8. Neither the proposed termination nor the final termination mentioned Plaintiff's January 6 "report" and Plaintiff did not discuss it at the February 10 hearing. Simply put, the "report" had no part in the decision-making process.

The City's evidence is sufficient to meet its burden of production and shift the burden back to Plaintiff to show pretext — which she cannot do. Plaintiff has no evidence of pretext and her claims must be dismissed.

## IV.  PLAINTIFF'S EMOTIONAL DISTRESS CLAIMS ARE BARRED.

The Court should dismiss Plaintiff's emotional distress claims because they are barred by the statute of limitations. Alternatively, the Court should decline to exercise supplemental jurisdiction over them. Claims for emotional distress must be brought within

two years. *Feltmann v. Petco Animal Supplies, Inc.*, No. 2:11-CV-414-EJL-MHW, 2012 WL 1189913, at *2 (D. Idaho Mar. 20, 2012). Although some emotional distress claims can be based on acts outside the two-year timeframe under the continuing tort theory, "the statute of limitations is only held in abeyance until the tortious acts cease." *Curtis v. Firth*, 123 Idaho 598, 604, 850 P.2d 749, 755 (1993). The Court can consider these claims under 28 U.S.C. § 1367(a), which states that a federal court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy…." However, a federal district court may decline supplemental jurisdiction under certain circumstances, including:

> (1) if the claim raises a novel or complex issue of state law;
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
> (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Additionally, federal district courts must consider "the *Gibbs* values of economy, convenience, fairness and comity." *Martin v. Smith*, No. CV 08-470-S-CWD, 2009 WL 10712518, at *4 (D. Idaho Mar. 17, 2009) (*citing United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)).

In this case, Plaintiff's emotional distress claims are based on events or behaviors that happened more than two years before she filed the complaint. For example, Plaintiff claims she experienced emotional distress due to Mr. Hodge's alleged sexual advances on her and his alleged comment regarding suicide knowing Plaintiff's son had committed suicide. *Amended Complaint*, ¶¶ 88–89, 96. However, during her deposition, Plaintiff clarified that the alleged comment about suicide came after Plaintiff refused to go for a ride with Mr. Hodge in his truck. *Declaration of Counsel*, Ex. G, Transcript of Deposition of

Plaintiff, p. 58, ll. 7–25, p. 59, ll. 1–17. Plaintiff also said that the last time Mr. Hodge invited her to go for a ride was July 2018. *Id.* at Ex. A. She also admitted that all inappropriate, sexual innuendo also ended in July 2018. *Id.* The behaviors that Plaintiff relies on to make her emotional distress claims all happened more than years before she filed this lawsuit and therefore cannot serve as the bases for her emotional distress claims.

If the Court determines that Plaintiff's emotional distress claims are not time-barred, it should decline to exercise supplemental jurisdiction over Plaintiff's emotional distress claims. Emotional distress claims are not novel or complex and do not predominate Plaintiff's federal claims. However, once the Court grants Defendants' motion for summary judgment and dismisses the federal claims (and state claims with identical analyses), Plaintiff's emotional distress claims will lack any federal implication and declining to exercise supplemental jurisdiction will be proper.

Additionally, the *Gibbs* values support declining supplemental jurisdiction. An Idaho state court would be a far more convenient and efficient forum for Plaintiff to pursue claims of emotional distress.

## CONCLUSION

For the reasons stated above, the Court should grant Defendants' motion and dismiss this case.

Dated this 29th day of November, 2022.

_Sam Angell_
SAM L. ANGELL

# CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing document upon the following this 29th day of November, 2022, by the method indicated below:

Kelly H. Andersen, Esq.　　　　　　　　　　[X] CM/ECF
David W. Gadd, Esq.
STOVER GADD & ASSOC.
PO Box 1428
Twin Falls, ID 83303
Email: kha@magicvalleylaw.com
Email: dwg@magicvalleylaw.com


_____
SAM L. ANGELL