BLAKE G. HALL, ESQ.
SAM L. ANGELL, ESQ.
DILLON S. ERICKSON, ESQ.
HALL ANGELL & ASSOCIATES, LLP
1075 S Utah Avenue, Suite 150
Idaho Falls, Idaho 83402
Telephone (208) 522-3003
Fax (208) 621-3008
*ISB Nos. 2434, 7012 and 10312*
bgh@hasattorneys.com
sla@hasattorneys.com
dse@hasattorneys.com
Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINDSEY YEAMAN, an individual,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF BURLEY, an Idaho municipal corporation; and DEE HODGE, an individual,<br><br>　　　　　　　Defendant. | Case No. 4:21-cv-345<br><br>**DECLARATION OF CAROL ANDERSON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

I, CAROL ANDERSON, hereby swear under penalty of perjury as follows:

1.    That I am over the age of eighteen (18) and am competent to testify in this matter. I make this declaration based on my own personal knowledge

2.    I am the Director of Human Resources for the City of Burley. I have worked in this position since 2014.

3.    Lindsey Yeaman came to my office on January 6, 2020, accompanied by Ottis Dan Pherigo. Ms. Yeaman wanted to talk about her job and some issues she was having with her supervisor Dee Hodge. She told me that felt like Mr. Hodge intimidated and bullied her, sabotaged her work, withheld information or gave her the wrong information, made up rules

DECLARATION OF CAROL ANDERSON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 1

that only applied to her, and isolated her from her coworkers. Ms. Yeaman said she was the only person not allowed to wear hats or go get coffee.

4.      I invited the City Administrator, Mark Mitton, into my office while Ms. Yeaman was there so she could describe the situation to him as well. She repeated the same issues to Mr. Mitton.

5.      After listening to Ms. Yeaman's complaints, I did not feel as though anything she described required further action.

6.      I was later informed that Dee Hodge had initiated the process to terminate Ms. Yeaman's employment. As part of the process, Ms. Yeaman was entitled to a hearing to discuss the reasons for the proposed termination. She chose to have the hearing which was held on February 10, 2020. Mr. Hodge and I were present for the meeting along with Ms. Yeaman and Mr. Pherigo.

7.      According to City policy and practice, any employee who chooses to be heard on a matter of proposed disciplinary action is entitled to present any argument s/he chooses. During Ms. Yeaman's hearing, she spoke for almost 90 minutes and focused on attempting to justify her job performance. She did not bring up any allegations that Mr. Hodge was sexually harassing her.

8.      After the hearing, Mr. Hodge decided to terminate Ms. Yeaman's employment. I drafted the Notice of Termination of Employment and together with Mr. Hodge, delivered it to Ms. Yeaman at her house. I reminded her of her ability to appeal the decision to the Mayor but she never appealed the decision.

9.      While Ms. Yeaman was employment by the City, the City had a personnel policy which included antiharassment and antidiscrimination provisions and the process through which employees could make reports of harassment or discrimination.

DECLARATION OF CAROL ANDERSON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 2

10.    Attached hereto as Exhibit A is a true and correct copy of the City's antiharassment and antidiscrimination policies and the reporting process.

Dated: __11/29/2022__ .

_Carol Anderson_

Carol Anderson

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing document upon the following this 29th day of November, 2022, by the method indicated below:

Kelly H. Andersen, Esq.                          [X] CM/ECF
David W. Gadd, Esq.
STOVER GADD & ASSOC.
PO Box 1428
Twin Falls, ID 83303
Email: kha@magicvalleylaw.com
Email: dwg@magicvalleylaw.com

_____
SAM L. ANGELL

DECLARATION OF CAROL ANDERSON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 4

# EXHIBIT A



# PERSONNEL RULES
# AND
# REGULATIONS

Adopted

November 7, 2018

# PERSONNEL RULES AND REGULATIONS
## OF THE
## CITY OF BURLEY

## TABLE OF CONTENTS
**Revised August 2014**

**RULE 1: DEFINITIONS**                                                        **pg. 6**

Section A: Definitions                                                          pg. 6

**RULE 2: APPOINTMENTS**                                                        **pg. 8**

Section A: Definitions                                                          pg. 8
Section B: Types of Appointments                                               pg. 9
Section C: Physical Ability/Skills Screening                                   pg. 10
Section D: Legal Requirements and Non-Discrimination                          pg. 10
Section E: Fingerprinting                                                       pg. 11
Section F: Criminal Conduct                                                     pg. 11
Section G: Outside Employment                                                   pg. 11
Section H: Nepotism                                                             pg. 12
Section I: Probationary Period                                                  pg. 12
Section J: Veterans Preference                                                  pg. 13

**RULE 3: RECRUITMENT/EXAMINATION**                                            **pg. 13**

Section A: Purpose                                                              pg. 13
Section B: Need                                                                 pg. 13
Section C: Definition                                                           pg. 13
Section D: Contents                                                             pg. 14
Section E: Examination Types                                                    pg. 14
Section F: Notice of Examination                                               pg. 15
Section G: Publicity                                                            pg. 15
Section H: Minimum Qualifications                                              pg. 15
Section I: Filing of Application                                                pg. 15
Section J: Application Review                                                   pg. 16
Section K: Modification or Waiver of Examination                              pg. 16
Section L: Admission                                                            pg. 16
Section M: Reasonable Accommodation                                            pg. 17
Section N: Examination Grades                                                   pg. 17
Section O: Retesting                                                            pg. 17
Section P: Correction of Examinations                                          pg. 17
Section Q: Completion of Examination                                          pg. 17
Section R: Appeals                                                             pg. 18

**RULE 4: ELIGIBLE LISTS**      **pg. 18**

Section A: Definition      pg. 18
Section B: Subdivision of Lists      pg. 18
Section C: Placement of Names      pg. 19
Section D: Removal of Names      pg. 19
Section E: Inactive Status      pg. 20
Section F: Re-qualification without Examination      pg. 20

**RULE 5: CERTIFICATION**      **pg. 20**

Section A: Definition      pg. 20
Section B: Requests for Certification      pg. 21
Section C: Appropriate List      pg. 21
Section D: Order of Preference      pg. 21
Section E: Selective Certification      pg. 22
Section F: Insufficient Names      pg. 22
Section G: Use of Other Lists      pg. 22
Section H: Departmental Objection      pg. 22
Section I: Finding of Insufficiency      pg. 22

**RULE 6: ASSIGNMENTS AND SEPARATION**      **pg. 23**

Section A: Transfers, Voluntary Demotions and Job Changes      pg. 23
Section B: Definition of Voluntary Demotion      pg. 23
Section C: Definition of Transfer /Reassignment      pg. 23
Section D: Transfer/Voluntary Demotion Procedures      pg. 23
Section E: Job Changes      pg. 23
Section F: Automatic Resignation      pg. 24
Section G: Resignation      pg. 24

**RULE 7: CLASSIFICATION**      **pg. 24**

Section A: Classification Plan      pg. 24
Section B: Definition      pg. 25
Section C: Class Specification      pg. 25
Section D: Classification Series      pg. 25
Section E: Position Authorization      pg. 25
Section F: Maintenance of the Classification Plan      pg. 26
Section G: Classification Review Procedures      pg. 26
Section H: Classification Appeal Procedure      pg. 27
Section I: Results of Classification Studies      pg. 27
Section J: Technical Title Change      pg. 28

**RULE 8: WORK PERFORMANCE EVALUATION**                    **pg. 29**

    Section A: Purpose                                      pg. 29
    Section B: Standards                                    pg. 29
    Section C: Departmental Responsibility                  pg. 29
    Section D: Employee Responsibility                      pg. 29
    Section E: Evaluations                                  pg. 29
    Section F: Use                                          pg. 30
    Section G: Records                                      pg. 30

**RULE 9: DISCIPLINARY ACTION**                            **pg. 31**

    Section A: Definition                                   pg. 31
    Section B: Causes of Action                             pg. 31
    Section C: General Provisions                           pg. 32
    Section D: Opportunity to be Heard Concerning Proposed Discipline    pg. 33
    Section E: Appeal of Decision Imposing Demotion w/Reduction in Pay,
        Suspension Without pay or Dismissal from Employment    pg. 35
    Section F: Opportunity to be Heard – Assertions of Unlawful Discrimination and
        "Name Clearing Hearing"                             pg. 36
    Section G: Letter of Reprimand                          pg. 38
    Section H: Disciplinary Action – Immediate Suspension   pg. 38

**RULE 10: DISMISSAL WITHOUT CAUSE**                       **pg. 38**

    Section A: Dismissal without Cause                      pg. 38

**RULE 11: COMPENSATION**                                  **pg. 38**

    1. Salary Adjustments                                  pg. 38
    2. Overtime Pay                                        pg. 40
    3. Differential Pay                                    pg. 41
    4. Retention Incentive Pay                             pg. 41
    5. On-Call Pay                                         pg. 41
    6. Call Back                                           pg. 42
    7. Out of Class                                        pg. 42
    8. Merit Incentive                                     pg. 42
    9. Uniforms                                            pg. 42
    10. Educational Reimbursement                          pg. 43
    11. Benefits                                           pg. 43
    12. Cafeteria Plan                                     pg. 43
    13. Retirement Contribution                            pg. 44
    14. Leave Provisions                                   pg. 44
    15. Rest Periods                                       pg. 50
    16. Expense Reimbursement                              pg. 51
    18. Promotional Probation                              pg. 51

19. Pay Periods                                              pg. 52
20. Salary Rates                                             pg. 52
21. Relief Employees                                         pg. 53
22. Standard Tour of Duty                                    pg. 53
23. Dual Appointment                                         pg. 54
24. Job Sharing                                              pg. 54
25. Lay Off Procedure                                        pg. 54
26. Reserve Firefighters Pay Scale                           pg. 55

**RULE 12: OTHER PROVISIONS                                  pg.  56**

**Attachment A: DRUG AND ALCOHOL ABUSE POLICTY              pg.  58**

**Attachment B: DISCRIMINATION AND HARRASSMENT POLICY        pg.  68**

**Attachment C: TRAVEL AND TRAINING POLICY                   pg. 74**

**Attachment D:  INFORMATION SYSTEMS POLICY                  pg. 78**

**RULE 9: DISCIPLINARY ACTION**

**Section A: Definition**

**All City of Burley employees are "at will" employees and may be dismissed or terminated at any time without cause. Regular Employees may also be dismissed or terminated for cause. Rule 9 applies to discipline or termination for cause. This policy is not a progressive discipline policy. Employees may be terminated for cause for 1 violation of these rules.**

The following constitutes the appropriate procedures for taking disciplinary action against a regular employee for cause. Disciplinary action means an action taken by the City resulting in a letter of reprimand, dismissal, suspension without pay, reduction in salary step for a specified time period, probation or demotion of a regular employee. These procedures are directory in nature and minor variations of the processes set forth herein shall not affect the validity of any actions taken pursuant to this policy. For the purposes of Rule 9, the City Clerk, City Attorney, Library Director, City Administrator, and elected officers, are not a regular employees.

**Section B: Cause(s) of Action**

An employee with regular status with the City may be disciplined for cause. The following are declared to be causes for action although charges may be based upon causes other than those listed herein:

1. Omission or willful misrepresentation of a material fact or other fraud in securing employment including, but not limited to, the following:

   a. Falsification of application for work;

   b. False information regarding driver's license; or

   c. False information regarding professional licenses, credentials, or certificates;

2. Falsification of an official statement or document;

3. Failure to meet work performance standards and requirements;

4. Willful or negligent disobedience of any job-related law, ordinance, City rule, or departmental regulation or any superior's lawful order.

5. Incompetence;

6. Inefficiency;

7. Inexcusable neglect of duties;

8.  Insubordination;

9.  Dishonesty;

10. Improper use of drugs or alcohol including, but not limited to, the following:

    a.  In possession of, under the influence of, alcohol beverages, while at work or in City work areas; or

    b.  In possession, in use, under the influence of, or trafficking in habit-forming drugs and/or narcotics while at work or on City property. The term "drugs" means controlled substance as defined in Idaho Code.

11. Unexcused absence from duty, including, but not limited to, participation in unlawful strikes or other job actions, such as sick-ins or slowdowns;

12. Conviction of felony or conviction of a misdemeanor involving moral turpitude; a plea or verdict of guilty, or a conviction following a plea of nolo contendere, to charge a felony or any offense involving moral turpitude is deemed to be a conviction within the meaning this subsection;

13. Discourteous treatment of the public or other employees;

14. Working in an unsafe manner, not using safety equipment provided;

15. Misuse of City property or damage to City property resulting from misuse or negligence;

16. Inconsistent, incompatible, or conflicting employment activity or enterprise;

17. Violation of a department rule;

18. Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to the City;

19. Sexual harassment; **Zero Tolerance Policy.**  See Attachment "B"

20. Failure to comply with any requirements of the Department of Transportation, Drug Testing Regulations; and

21. Confirmed failure of any drug test.

22. Failure to submit to or show up for a drug test.

**Section C: General Provisions**

1. Except as otherwise provided, provisional, probationary relief employees and reserve firefighters may be dismissed, suspended, reduced in salary step for a specified time period, demoted or reprimanded without right to review or appeal unless otherwise required by law.

2. Disciplinary action may be taken against an employee by his or her department head, the city administrator and/or mayor. A department head should communicate with the city administrator before taking any disciplinary action unless immediate action is essential to avert harm to the City or the public. A department head should not take action against an employee for demotion with a reduction in pay, suspension without pay or dismissal from employment unless the department head has first informed the city attorney of the proposed action. For the purposes of this Rule 9, designated officials are those designated by the mayor. The mayor may also designate himself.

3. The Burley Firefighters have entered into the IAF AFL-CIO Burley Firefighters Local #3308 Collective Bargaining Agreement which expires September 30, 2020. The provisions of said Agreement, and any Agreement replacing said agreement in the future, control over any conflicting provisions of these Personnel Rules and regulations. The provisions of this Rule 9 apply to the Burley Firefighters as described in the Agreement.

4. For any other employee employed by written contract, the terms of the written contract shall control over any conflicting provisions of this Rule 9.  If a procedure is provided in the written contract for disciplinary action or termination of employment, then the procedures required in this Rule 9 do not apply to contracted employees unless referenced in the written contract.

5. Any dismissal procedures set forth in the Idaho Code for elected officials, City Clerk, City Attorney, Library Director and City Administrator shall control over the provisions of this Rule 9. If a procedure is provided in the Idaho Code for termination of employment, then the procedures for termination of employment for cause set forth in this Rule 9 will not be required for termination for cause of the elected or appointed employee.

6. Termination of employment of returning veterans is subject to the provisions of The Uniformed Services Employment and Reemployment Rights Act and other applicable provisions of Idaho State law.


**Section D: Opportunity to be Heard Concerning Proposed Discipline**

When it is proposed that disciplinary action for cause be taken, the personnel policy of the City establishes the right of regular employees (but not reserve firefighters, independent contractors, probationary employees, provisional employees, seasonal employees, temporary employees or legal counsel for the City) to be heard in the event of contemplated demotion with a reduction in pay, suspension without pay or dismissal from employment. The opportunity to be heard is designed to be informal allowing the employee to discuss with his/her

33

department head, the City Administrator, mayor, or other designated official (at the employer's discretion) the facts surrounding the proposed disciplinary action and to provide any additional documentation that the employee believes would be helpful in explaining his/her actions, attitude or behavior.

The following steps should be followed by the department head or other official initiating the proposed action;

1. The employee shall be provided with a written notice of the reasons for the proposed personnel action that would affect him/her, along with an explanation of the City's supporting information and the proposed personnel action. The written notice may be personally served or mailed to the employees last known address by United States certified mail.

2. The written notice will include a date, time and place for the employee to be heard to discuss the proposed personnel action.

3. The notice should state whether the employee is being placed on suspension pending the outcome of the opportunity to be heard, and whether any such suspension will be with or without pay.

4. If the employee is unable to participate in the scheduled opportunity to be heard, s/he may request an alternate date and time. Any approved alternate date that falls after the scheduled date and time may be without pay, if any has been provided by the City.

5. The employee must notify his/her department head or other official initiating the propose action within three (3) business days of the date that the notice was served or delivered that he/she desires to be heard as scheduled in order to discuss the reasons for the proposed personnel action. If notice of acceptance of the opportunity to be heard is not received within three business days, the opportunity to be heard will be vacated and deemed waived.

6. As an alternative to an opportunity to be heard, the employee may choose to provide a written response to the basis for the proposed personnel action. This written response must be submitted no later than the scheduled date and time initially set for the opportunity to be heard.

7. The opportunity to be heard, if chosen, will last no longer than one hour, unless otherwise approved by the department head or other official initiating the proposed action, and will be limited to discussion of the issues contained in the notices and to any allegations by the employee of unlawful discrimination in employment. The employee will be permitted to present his/her position with respect to each matter identified in the notice and/or offer information in mitigation of any disciplinary action. The employee shall not be entitled to a formal hearing with examination of witnesses, but he/she may present his or her own oral statements and written statements of any witness and other documentary material.

34

8. The employee will not be prohibited from having an attorney assist him/her at the employee's own expense. The employer may also have assistance of an attorney.

9. The employer may ask the employee questions for clarification purposes should that be necessary during the discussion.

10. The employee shall not have the opportunity to question the supervisor or department head, unless the supervisor or department head introduces a new basis for the personnel action during the discussion.

11. The Idaho Rules of Evidence shall not apply to the opportunity to be heard.

12. Unlawful discrimination allegations <u>must</u> be raised during this process, or they will be deemed waived by the employee.

13. The employer will render a written decision after considering employee's responses, if any, to the allegations set out in the notice. The written decision will:
    a. Uphold the proposed disciplinary action;
    b. Notify the employee that the prosed disciplinary action will not be imposed;
    c. Impose a lesser disciplinary action; or
    d. Amend the charges. In the event the department head substantively amends the intended charges or proposes an increased punishment, he shall give another notice as provided in paragraph 1 of this Section D.

14. FAILURE TO PARTICIPATE IN THIS OPPORTUNITY TO BE HEARD ALLOWED HEREIN SHALL CONSTITUTE A FAILURE TO EXHAUST ADMINISTRATITVE REMEDIES UNDER THIS POLICY.

**Section E: Appeal of Decision Imposing Demotion with a Reduction in Pay, Suspension Without pay or Dismissal from Employment**

An employee who participated in a pre-disciplinary hearing as described in Section D above who is not satisfied with the outcome of said hearing, may file a written appeal of the decision. The written appeal must be filed with the City Administrator within seven (7) calendar days after receiving the decision of discipline. The written appeal shall contain an answer to each charge or allegation made by the employer. The appeal shall be heard by the city administrator or other designated official.

The following steps should be followed by the city administrator or other designated official;

1. The employee shall be provided with a written notice of the date time and place of the hearing. The hearing may be postponed by the hearing official upon a showing of good cause by either party. The written notice may be personally served or mailed to the employee's last known address by United States certified mail.

2. If the employee fails to appear at the appeal hearing the hearing will be vacated and deemed waived.

3. The employee shall have the right to be represented by an attorney and to present evidentiary facts. The hearing official may at any time exclude any person who may be a witness in the case under consideration, with the exception of the employee and the departmental representative.

4. The hearing shall be informal and the hearing official shall not be bound by the rules of evidence governing trial procedure in State or Federal Courts. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions. Hearsay evidence may be used for the purpose of supplementing other evidence; however, it shall not be deemed sufficient in itself to support a finding unless it would be admissible over objection in civil actions.

5. The rules of privilege shall be effective to the extent that they are otherwise required by statute to be recognized at the hearing, and irrelevant and unduly repetitious evidence shall be excluded.

6. In arriving at a decision, the hearing official may consider any prior City disciplinary action including any relevant letters of reprimand filed with the Personnel Officer. The hearing Official shall make an official decision either affirming, modifying or revoking the previous decision. The decision shall contain findings of fact which may be stated in the language of the pleadings or by reference thereto. A copy of the written decision of the hearing official shall be served on the employee by personal service or by certified U.S. mail.

7. FAILURE TO PARTICIPATE IN THIS APPEAL HEARING ALLOWED HEREIN SHALL CONSTITUTE A FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES UNDER THIS POLICY.

**Section F: Opportunity to be Heard – Assertions of Unlawful Discrimination and "Name-Clearing Hearing"**

This policy establishes an opportunity to be heard in the event of a discharge or demotion with a reduction in pay; and 1) the employee asserts that the discharge or demotion is actually the consequence of alleged unlawful discrimination by the City or 2) if the allegation involves dishonesty, immorality or criminal misconduct that would entitle the employee to a "name-clearing hearing." *Cox v. Roskelley,* 359 F. 3d 1105 (9th Cir. 2004)."

Unlawful discrimination addresses actions that are alleged to involve decisions based upon age, sex, race, religion, national origin or disability that is not a bona fide occupational qualification. Issues of job performance or employee attitude are not the proper subject of this opportunity to be heard. The City does not condone discrimination on the basis of the

foregoing unlawful categories. **FAILURE TO SEEK AN OPPORTUNITY TO BE HEARD PURSUANT TO THIS POLICY SHALL CONSTITUTE A FAILURE TO EXHAUST REMEDIES UNDER THIS POLICY.** Any employee entitled to an opportunity to be heard as a result of a disciplinary action that concerns job performance or behavior must raise allegations of unlawful discrimination or the need for a "name-clearing hearing" in the course of that disciplinary process, with such issues to be addressed as provided by this section of the policy.

When the employee asserts an allegation of unlawful discrimination or the need for a "name-clearing hearing," the elements of procedure to be followed and undertaken at the direction of the City Administrator or other designated official, unless the name clearing hearing is combined with the appeal hearing described above or unless waived by the employee, are as follows:

1. The employee may, within fourteen (14) days of his/her termination or demotion, submit to the City Administrator a written allegation of unlawful discrimination or a request for a "name-clearing hearing," stating with particularity the basis for the requested opportunity to be heard. Complaints filed untimely or failing to state a particular, legally recognized basis for this opportunity will not be heard.

2. The opportunity to be heard with regard to the employee's allegations shall be provided promptly after receipt of a properly documented request.

3. An employee alleging unlawful discrimination or entitlement to a "name clearing hearing" shall be allowed one (1) hour, unless otherwise approved by the designated official, to meet and discuss the allegations with the City Administrator or other designated official.

4. There shall be a record maintained, including a tape recording, of the discussion that constitutes the opportunity to be heard.

5. The employee's supervisor, to the extent of his/her knowledge, may be required to provide a brief, written statement in response to the particular allegation of discrimination or "name-clearing" request. The designated official may request that the employee's supervisor and other witnesses participate in the discussion.

6. The employee will not be prohibited from having an attorney assist him/her at the employee's own expense.

7. The employee will be allowed to present oral testimony (or provide written statements) concerning evidence upon which the alleged discrimination or "name-clearing" is based.

8. The official may ask the employee's witness's questions for clarification purposes should that be necessary during the discussion process.

9. The employee shall <u>not</u> have the opportunity to question any participants during this process, but may submit written questions for the official to consider.

37

10. The Idaho Rules of Evidence do not apply to this opportunity to be heard.

After the conclusion of the discussion, the City Administrator or other designated official will be considered the information submitted and such other information as might be in the city's records to arrive at a decision concerning the employee's allegations. Said decision shall set forth the reasons for the determination in writing. If as a result of this opportunity to be heard, the City Administrator or other designated official finds fault with the basis for the City's action, remedial action may be prescribed, including restoration of employment and payment of back pay.

**Section G: Letter of Reprimand**

A Letter of Reprimand is considered to be a disciplinary action. Any employee receiving a Letter of Reprimand may respond in writing to the Letter of Reprimand within thirty (30) calendar days from the date that the Letter of Reprimand is received. The employee's written response shall be attached to the Letter of Reprimand and placed in the employee's personnel file. Sections D and E of this Rule shall not apply to letters of reprimand. The Letter of Reprimand shall not be appealable.

**Section H: Disciplinary Action – Immediate Suspension**

The department head may suspend an employee without prior notice if immediate suspension is essential to avert harm to the City or to the public. In such case, if the suspension is without pay, the notice of suspension shall inform the employee of his or her right to be heard and appeal that shall follow the procedures outlined in Section D and E of this Rule.

## RULE 10: DISMISSALS WITHOUT CAUSE

**Notwithstanding any other provision of these rules all employees of the City of Burley, including "regular employees" are and, at all times, shall be "at will" employees. Any and all employees may be dismissed at any time without cause and without notice. Unless specifically designates as "for cause" all terminations shall be "without cause."**

## RULE 11: COMPENSATION

**PREAMBLE**

It is the purpose of this section to set forth the wages, hours and other terms and conditions of employment for employees of the City of Burley.

1. **Salary Adjustments**
   **(A).** The following base pay ranges and rates shall be applicable on the dates indicated for classifications in this section commencing upon adoption.

| Classification | Grade |
|---|---|
|  |  |
| City Administrator | 55 |
| Electrical Department Superintendent | 53 |
| Water Superintendent/City Engineer | 51 |
| Wastewater Director | 47 |
| Superintendent Golf & Parks | 46 |
| Fire Chief | 45 |
| Library Director | 45 |
| Building – Community Services Director | 44 |
| Fleet Equipment Manger | 44 |
| Street Operations Manger | 44 |
| City Clerk | 44 |
| HR Manager | 43 |
| Sanitation Manager | 42 |
| Cemetery Superintendent | 41 |
| Wastewater Treatment IV | 39 |
| Electrician Electrical Inspector & Meterman | 39 |
| Wastewater Instrumentation Technician | 38 |
| Water Responsible Charge Operator | 37 |
| Wastewater Inspector Plumber | 37 |
| Economic & Community Development | 35 |
| Administrative Assistant/HR | 35 |
| Water Back-Up Operator | 33 |
| Sanitation Assistant Supervisor | 33 |
| Street Lead Worker | 33 |
| Electric Electrical Foreman | 33 |
| Wastewater Treatment III | 32 |
| Wastewater Pretreatment Coordinator | 32 |
| Building – Maintenance | 31 |
| Assistant Library Director | 30 |
| Payroll Clerk | 30 |
| Billing Technician | 30 |
| Golf Assistant Superintendent | 30 |
| Electric Journeyman Lineman | 30 |
| Accounts Payable & Receivable | 30 |
| Water Distribution 3 | 29 |
| Parks Foreman | 29 |
| Water Distribution 2 | 28 |
| Wastewater Collections IV | 28 |
| Wastewater Maintenance Tech | 27 |
| GIS Specialist | 27 |
| Fleet Equipment Mechanic II | 27 |
| Wastewater Collections III | 27 |
| Wastewater Treatment II | 25 |

| | |
|---|---|
| Fleet Equipment Welder/Mechanic I | 25 |
| Wastewater Lab Analyst II | 24 |
| Water Distribution 1 | 23 |
| Wastewater Collections II | 23 |
| Wastewater Lab Analyst I | 21 |
| Wastewater Collections I | 20 |
| Wastewater Treatment I | 20 |
| Sanitation Truck Operator | 20 |
| Street Equipment Operator | 20 |
| Wastewater Lab Tech/Pretreatment Assist | 20 |
| Department Secretary | 20 |
| Animal Control | 18 |
| Wastewater Operator Apprentice | 17 |
| Electric Apprentice Lineman | 17 |
| Account Clerk I | 16 |
| Sanitation Back Up Operator | 16 |
| Water Operator Apprentice | 16 |
| Librarian Young Adult | 16 |
| Children's Librarian Position | 16 |
| Disconnect/Reconnect | 16 |
| Cemetery Labor | 15 |
| Library Assistant 2 | 13 |
| Street Sweeper Operator | 13 |
| Clerical/Receptionist | 9 |
| Library Assistant 1 | 8 |
| Library Intern | 3 |

**2.** For purposes of this section, base pay range shall mean the pay range assigned to a specific classification. Paid time shall be based upon the base pay rate with the computation rounded to the nearest cent.

**Overtime**

**(a) Policy.** It is the policy of the City of Burley to discourage overtime except when necessitated by abnormal or unanticipated workload situations. It is the responsibility of the department head to arrange for the accomplishment of workload under their jurisdiction within the normal tour of duty of employees. Each department shall keep complete and accurate records of all overtime earned in every pay period. The City has the right to require overtime to be worked as necessary. Prior to requiring overtime, the department head or designee shall solicit qualified volunteers from within the department. To the extent possible, overtime will be distributed equitably amongst qualified employees within the department.

**(b) Definition.** Overtime is defined as hours actually worked in excess of forty (40) hours in a workweek. Paid leave shall not be considered as time actually worked for purposes of

computing overtime. Overtime shall be reported in increments of full fifteen (15) minutes & is non-accumulative and non-payable in units of less than fifteen (15) minutes. Overtime shall not affect leave accruals.

**(c) Overtime Compensation.** Any employee authorized by the department head or authorized representative to work overtime shall be compensated at premium rates, i.e. one and one-half (1 ½) times the employee's regular hourly rate of pay. The Department Head or Supervisor shall first assign overtime to be compensated as compensatory time off (CTO). CTO shall be credited at time and one-half. No more than forty (40) hours shall be accrued. When the employee reaches the forty (40) hour maximum additional overtime worked shall be compensated in cash. If an employee draws down his or her CTO balance, additional hours may be accrued until the forty (40) hour maximum is reached. Compensating time off may be taken at the request of the employee and with the approval of the department head or designee. Compensating time off will be taken in straight time hours. Prior to the transfer and/or promotion of an employee, all compensating time off shall be taken or paid at the employee's then current base hourly rate.

**(d) Flexible Work Schedule.** Flexible work hours during the employees' standard tour of duty will be allowed only by the Department Head. Department heads have the exclusive authority to set Departmental policy regarding the starting and stopping of work hours for employees working a flexible work schedule.

**(e) Workweek.** The workweek for purposes of overtime is 5:01 p.m. Friday to 5:00 p.m. the following Friday. Department heads and individual employees may agree to modify the workweek in order to facilitate flexible work hours.

**3.  Pay Differential            Reserved**
**4.  Retention Incentive Pay**

Employees in regular positions having completed ten (10) continuous years of City employment shall be granted retention incentive pay. Retention incentive pay shall be paid at the rate of Twenty Dollars ($20.00) per pay period for each pay period worked. Employees in regular positions having completed (17) continuous years of City employment shall be granted retention incentive pay. Retention incentive pay shall be paid at the rate of an additional Twenty Dollars ($20.00) per pay period for each pay period worked.

**5.  On-call Pay**

Employees who are released from active duty but are required by their departments to leave notice where they can be reached and be available to return to active duty when required by the department, shall be assigned to on-call duty. While on-call duty, an employee shall be free to use the time for his or her own purposes.

41

On-call duty requires that employees so assigned shall: (1) leave a telephone number where they can be reached or wear a communicating device; and (2) be able to respond to duty within a reasonable period of time. On-call time shall not count as hours worked.

Assigned personnel shall receive on-call pay in the amount of eighty-five dollars ($85.00) per week.

### 6.  Call Back

When an employee returns to active duty and the work station at the request of the department head after said employee has been released from active duty and has left the work station, said employee shall be entitled to call-back compensation.

Special tours of duty scheduled in advance (24 hour notice) or when employees are called back within two (2) hours of the beginning of a scheduled tour of duty are not call-back hours for purposes of this section. An employee need not be assigned on call to be entitled to receive call-back compensation. Call-back compensation shall be paid in the following manner: The employee shall be paid for two (2) hours at straight time rates for each call-back occurrence; said compensation shall be in lieu of any travel time and expense to and from home and the first or last work contact point. Call back hours worked, beyond 2 hours, shall be reported in 15 minute increments. All time actually worked shall be considered as time actually worked for purposes of computing overtime.

### 7.  Out of Class Pay

Employees directed to continuously work in a vacant higher level regular position shall receive a salary rate increase to the higher level for the time actually worked in excess of one hundred twenty (120) hours. Such increases shall be determined as if the assignment had been a promotion. For purposes of this Section, a vacant position is defined as an authorized regular position that is unoccupied due to attrition or due to the incumbent being on an authorized regular position that is unoccupied due to attrition or due to the incumbent being on an extended leave of absence. Requests for higher compensation must be approved by the Personnel Officer. Such requests may only be approved upon certification by the department head that the assigned employee meets the minimum qualifications and is assigned and held responsible to fully perform the full scope of duties normally associated with the higher level position.

### 8.  Merit Incentive Pay

**<u>Reserved</u>**

### 9.  Uniforms

The City will pay for the cleaning of uniforms for Animal Control Officers.

**ATTACHMENT "B"**
**DISCRIMINATION AND HARRASSMENT POLICY**

The City of Burley is committed to a work environment in which all individuals are treated with respect and dignity. Each individual has the right to work in a professional atmosphere that promotes equal employment opportunities and prohibits unlawful discriminatory practices, including harassment. Therefore, the City of Burley expects that all relationships among persons in the City workforce will be business-like and free of bias, prejudice and harassment.

**Equal Employment Opportunity**

It is the policy of the City of Burley to ensure equal employment opportunity without discrimination or harassment on the basis of race, color, religion, sex, sexual orientation, gender identity or expression, age, disability, marital status, citizenship, genetic information or any other characteristic protected by law. The City of Burley prohibits any such discrimination or harassment.

**Retaliation is Also Prohibited**

The City of Burley encourages reporting of all perceived incidents of discrimination or harassment. It is the policy of the City to promptly and thoroughly investigate such reports. This policy also prohibits retaliation against any individual who reports discrimination or harassment or participates in an investigation of such reports.

Harassment, including sexual harassment, is prohibited by federal and state laws. This policy prohibits harassment of any kind that is prohibited by federal or state laws, and the City will take appropriate action swiftly to address any violations of this policy. The definition of harassment is verbal or physical conduct designed to threaten, intimidate or coerce. Also, verbal taunting (including racial and ethnic slurs) that, in the employee's opinion, impairs his or her ability to perform his or her job.

Examples of harassment are:

1. Verbal: Comments that are not flattering or are unwelcome regarding a person's nationality, origin, race, color, religion, gender, sexual orientation, age, body disability or appearance. Epithets, slurs, negative stereotyping.
2. Nonverbal: Distribution, display or discussion of any written or graphic material that ridicules, denigrates, insults, belittles, or shows hostility or aversion toward an individual or group because of national origin, race color, religion, age, gender, sexual orientation, pregnancy, appearance disability, gender identity, marital or other protected status.

**Sexual Harassment**

Sexual harassment in any form is prohibited under this policy. Sexual harassment is a form of discrimination and is unlawful under Title VII of the Civil Rights Act of 1964. According to the Equal Employment Opportunity Commission (EEOC), sexual harassment is defined as

68

"unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature….when… submission to or rejection of such conduct is used as the basis for employment decisions… or such conduct has the purpose or effect of …. Creating an intimidating, hostile or offensive working environment."

Sexual harassment includes unsolicited and unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, when such conduct:

1. Is made explicitly or implicitly a term or condition of employment.
2. Is used as a basis for an employment decision.
3. Unreasonably interferes with an employee's work performance or creates an intimidating, hostile or otherwise offensive environment.

Sexual harassment does not refer to behavior or occasional compliments of a socially acceptable nature. It refers to behavior that is unwelcome, that is personally offensive, that lowers morale and therefore interferes with work effectiveness. Sexual harassment may take different forms.

Examples of conduct that may constitute sexual harassment are:

1. Verbal: Sexual innuendoes, suggestive comments, jokes of a sexual nature, sexual propositions, lewd remarks, threats. Requests for any type of sexual favor (this includes repeated, unwelcome requests for dates). Verbal abuse or "kidding" that is oriented toward a prohibitive form of harassment, including that which is sex oriented and considered unwelcome.
2. Nonverbal: The distribution, display or discussion of any written or graphic material, including calendars, posters and cartoons that are sexually suggestive or show hostility toward an individual or group because of sex; suggestive or insulting sound; leering; staring; whistling; obscene gestures; content in letters and notes, facsimiles, email, photos, text messages, Internet posting, etc., that is sexual in nature.
3. Physical: Unwelcome, unwanted physical contact, including but not limited to touching, tickling, pinching, patting, brushing up against, hugging, cornering, kissing, fondling; forced sexual intercourse or assault.

Normal, courteous, mutually respectful, pleasant, non-coercive interactions between employees, including men and women, that are acceptable to and welcomed by both parties, are not considered to be harassment, including sexual harassment.

There are basically two types of sexual harassment:

1. "Quid pro quo" harassment, where submission to harassment is used as the basis for employment decision. Employee benefits such as raises, promotions, better working hours, etc., are directly linked to compliance with sexual advances. Therefore, only someone in a supervisory capacity (with the authority to grant such benefits) can engage in quid pro quo harassment. Example: A supervisor promising an employee a

69

raise if she goes on a date with him; a manager telling an employee she will fire him if he does not have sex with her.

2. "Hostile work environment," where the harassment creates an offensive and unpleasant working environment. Hostile work environment can be created by anyone in the work environment, whether it be supervisors, other employees or customers. Hostile environment harassment consists of verbiage of sexual nature, unwelcome sexual materials or even unwelcome physical contact as a regular part of the work environment. Texts, emails, cartoons or posters of a sexual nature, vulgar or lewd comments or jokes, or unwanted touching or fondling all fall into this category.

**Consensual Sexual Relationships**

1. The office strongly discourages romantic or sexual relationships between a management or other supervisory employee and his or her staff (an employee who reports directly or indirectly to that person) because such relationships tend to create compromising conflicts of interest or the appearance of such conflicts. In addition, such a relationship may give rise to the perception by others that there is favoritism or bias in employment decisions affecting the staff employee. Moreover, given the uneven balance of power within such relationships, consent by the staff member is suspect and may be viewed by others or, at a later date, by the staff member him/herself as having been given as the result of coercion or intimidation. The atmosphere created by such appearances of bias, favoritism, intimidation or coercion or exploitation undermines the spirit of trust and mutual respect that is essential to a healthy work environment. If there is such a relationship, the parties need to be aware that one or both may be moved to a different department or other actions may be taken.

2. If any City employee enters into a consensual relationship that is romantic or sexual in nature with a member of his or her staff (an employee who reports directly or indirectly to him or her), or if one of the parties is in a supervisory capacity in the same department in which the other party works, the parties must notify the manager. Although the parties may feel that what they do during non-working hours is their business and not the business of the office, because of potential issues regarding "quid pro quo" harassment, the office has made this a mandatory requirement. This requirement does not apply to employees who do not work in the same department nor to parties who do not supervise or otherwise manage responsibilities over the other.

3. Once the relationship is made known to the City, the City will review the situation with the City Administrator in light of all the facts (reporting relationship between the parties, effect on co-workers, job titles of the parties, etc.) and will determine whether one or both parties need to be moved to another job or department. If it is determined that one party must be moved, and there are jobs in other departments available for both, the parties may decide who will be the one to apply for a new position. If the parties cannot amicably come to a decision, or the party is not chosen for the position to which he or she applied, the parties will contact the City Administrator, who will decide which party should be moved.  That decision will be based on which move will be least disruptive to the organization as a whole.

70

4.  If it is determined that one or both parties must be moved, but no other jobs are available for either party, the parties will be given the option of terminating their relationship or resigning.

## Retaliation

No hardship, no loss or benefit, and no penalty may be imposed on an employee as punishment for:

1.  Filing or responding to a bona fide complaint of discrimination or harassment.
2.  Appearing as a witness in the investigation of a complaint.
3.  Serving as an investigator.

Retaliation or attempted retaliation is a violation of this policy and anyone who does so will be subject to severe sanctions up to and including termination.

## The Complaint Process

Any person electing to utilize this complaint resolution procedure will be treated courteously, the problem handled swiftly and as confidentially as feasible in light of the need to take appropriate corrective action, and the registering of a bona fide complaint will in no way be used against the employee nor will it have an adverse impact on the individual's employment status. While reporting such incidents would be a difficult personal experience allowing harassment activities to continue will most certainly lead to less desirable outcomes. For that reason, employees are strongly urged to utilize this procedure. However, filing groundless and malicious complaints is an abuse of this policy and is prohibited.

## Confidentiality

During the complaint process, while the confidentiality of the information received, the privacy of the individuals involved, and the wishes of the complaining person regarding action by the office cannot be guaranteed in every instance, they will be protected to as great a degree as is legally advisable when considering the City's responsibilities and local, state and federal laws and policies. The expressed wishes of the complaining person for confidentiality will be considered in the context of the City's legal obligation to act upon the charge and the right of the charged party to obtain information. In most cases, however, confidentiality will be strictly maintained by the City and those involved in the investigation. In addition, any notes or documents written by or received by the person(s) conducting the investigation will be kept confidential to the extent possible and according to any existing state or federal law.

## Complaint Procedure

The following complaint procedure will be followed in order to address a complaint regarding harassment, discrimination or retaliation.

71

1. A person who feels harassed, discriminated or retaliated against may initiate the complaint process by filing a written and signed complaint with the City Administrator, City Clerk, Department head or Human Resource Analyst. No formal action will be taken against any person under this policy unless a written and signed complaint is on file containing sufficient details to allow the City Administrator to determine if the policy may have been violated. The complainant (the employee making the complaint) may use the complaint form, which is attached to this policy. If a supervisor or manager becomes aware that harassment or discrimination is occurring, either from personal observation or as a result of an employee coming forward, the supervisor or manager should immediately report it to the City Administrator.

2. Upon receiving the complaint, or being advised by a supervisor or manager that violation of this policy may be occurring, the City Administrator will notify the City, and review the complaint with the City's legal counsel.

3. Within five (5) working days of receiving the complaint, the City Administrator will:

   a) Notify the person(s) charge [hereafter referred to as "respondent(s)"] of a complaint.
   b) Initiate the investigation to determine whether there is a reasonable basis for believing that the alleged violation of this policy occurred.

4. During the investigation, the City Administrator, together with legal counsel or other management employee, will interview the complainant, the respondent and any witnesses to determine whether the alleged conduct occurred.

5. Within 15 business days of the complaint being filed (or the matter being referred to the City Administrator), the City Administrator or other person conducting the investigation will conclude the investigation and submit a report of his or her findings to the City.

6. If it is determined that harassment or discrimination in violation of this City's policy has occurred, the City Administrator will recommend appropriate disciplinary action. The appropriate action will depend on the following factors; (i) the severity, frequency and pervasiveness of the conduct; (ii) Prior complaints made by the complainant; (iii) Prior complaints made against the respondent; (iv) the quality of the evidence (first-hand knowledge, credible corroboration etc.)

7. If the investigation is inconclusive or it is determined that there has been no harassment or discrimination in violation of this policy, but some potentially problematic conduct is reveled, preventative action may be taken.

8. Within five (5) days after the investigation is concluded, the City Administrator will meet with the complainant and the respondent separately in order to notify them in person of the findings of the investigation and to inform them of the action being recommended by the City Administrator.

9. The complainant and the respondent may submit statement to the City Administrator challenging the factual basis of the findings. Any such statement must be submitted no later than five (5) working days after the meeting with the City Administrator in which the findings of the investigation is discussed.

10. Within 10 days from the date the City Administrator meets with the complainant and respondent, the City will review the investigative report and any statements submitted by the complainant or respondent, discuss results of the investigation with the City Administrator and other management staff as may be appropriate and decide what action, if any, will be taken. The City Administrator will report the City's decision to the complainant, the respondent and the appropriate management assigned to the department(s) in which the complainant and the respondent work. The City's decision will be in writing and will include finding of fact and a statement for or against disciplinary action. If disciplinary action is to be taken, the sanction will be stated.