BLAKE G. HALL, ESQ.
SAM L. ANGELL, ESQ.
DILLON S. ERICKSON, ESQ.
HALL ANGELL & ASSOCIATES, LLP
1075 S Utah Avenue, Suite 150
Idaho Falls, Idaho 83402
Telephone (208) 522-3003
Fax (208) 621-3008
*ISB Nos. 2434, 7012 and 10312*
bgh@hasattorneys.com
sla@hasattorneys.com
dse@hasattorneys.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINDSEY YEAMAN, an individual,<br><br>       Plaintiff,<br><br>v.<br><br>CITY OF BURLEY, an Idaho municipal corporation; and DEE HODGE, an individual,<br><br>       Defendant. | Case No. 4:21-cv-345<br><br>**DECLARATION OF DEE HODGE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

I, DEE HODGE, hereby swear under penalty of perjury as follows:

1.      That I am over the age of eighteen (18) and am competent to testify in this matter. I make this declaration based on my own personal knowledge.

2.      I am one of the named defendants in this case. I was the Director of Wastewater Services for the City of Burley. I retired from that position in April 2022.

3.      In January 2020, I terminated Lindsey Yeaman's employment from the City of Burley because she was not adequately performing her job responsibilities.

DECLARATION OF DEE HODGE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 1

4.      From July 2018 until February 2020, Ms. Yeaman worked as the pretreatment coordinator for the City of Burley. However, during that time, I observed that she continually struggled to adequately fulfill her job responsibilities. I made multiple efforts to help her succeed including coaching her and setting various goals for her to meet.

5.      The pretreatment coordinator position requires adaptability, especially as circumstances in various water users occur and as regulations change. Ms. Yeaman's previous job as a laboratory technician did not require these skills and she performed adequately as a laboratory technician.

6.      There were many examples of when Ms. Yeaman was not performing her job satisfactorily. I included several examples in the Notice of Proposed Termination of Employment I signed and delivered to Ms. Yeaman on January 31, 2020.

7.      Attached hereto as Exhibit A is a true and correct copy of the Notice of Proposed Termination of Employment delivered to Ms. Yeaman.

8.      The notice included the following examples of Ms. Yeaman's failings:

   a.  Ms. Yeaman did not publish the 2019 violations and names of the industrial customers that had committed the violations.

   b.  In January 2020, I looked at the 2019 Industrial Customer self-testing spreadsheet where all the monthly data reported to Ms. Yeaman was accumulated. None of the customer data had been entered since the last part of November 2019 and some had not been entered since October 2019. Ms. Yeaman was supposed to include all that data in an annual report due to the Idaho Pollutant Discharge Elimination System Program by the first of

DECLARATION OF DEE HODGE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 2

March. There was no indication that Ms. Yeaman had even started to work on it by January 2020.

c.  In July 2019, the Idaho Department of Environmental Quality notified the wastewater department it would be doing a Pretreatment Compliance Inspection (PCI) on September 16, 2019, and requested certain documents be submitted before August 16, 2019, in order to inspect the files before the PCI. I approached Ms. Yeman to verify she was aware of the notice of the PCI. Ms. Yeaman was aware of the PCI and assured me she had no concerns or worries and that she was comfortable with the PCI.

d.  By August 2019, Ms. Yeaman informed me that she would not be able to meet the deadline. I had to request an extension from the DEQ. I told Ms. Yeaman that I wanted all the Industrial Inspections completed before the PCI except for the 5 DEQ reserved. I also told her to inspect the restaurants before the PCI.

e.  The DEQ requested additional information from Ms. Yeaman after the PCI. In November 2019, Ms. Yeaman and I discussed the request, and she assured me that she would send the requested information to the DEQ. By December 2019, Ms. Yeaman had completed the industrial inspections but had not inspected any restaurants.

f.  On December 18, 2019, I sent an email to the DEQ asking if the additional information had been sent. A representative from the DEQ told me she was still waiting on Ms. Yeaman to provide the information. By December 30, 2019, Ms. Yeaman had still not sent the information, so I asked another

employee to send it to the DEQ.

g.  On January 13, 2020, I called Shawn Burton at High Desert Milk to verify that Ms. Yeaman had done the required annual inspection. He informed me that she did not walk the premises to do an inspection but instead met with another representative of High Desert Milk. Ms. Yeaman should have actually inspected the facility.

9.    Ms. Yeaman's failings were sufficiently egregious to warrant terminating her employment. I had actually decided to terminate her employment by November 2019, but I did not want to fire her right before the holidays. Between November 2019, and January 2020, Ms. Yeaman continued to fail in the performance of her job duties.

10.    After receiving the notice of proposed termination, Ms. Yeaman chose to be heard on the matter and met with the City's Director of Human Resources, Carol Anderson, and me on February 10, 2020.

11.    After the hearing, I decided to move forward with the termination of Ms. Yeaman's employment.

12.    Attached hereto as Exhibit B is a true and correct copy of the Notice of Termination of Employment letter delivered to Ms. Yeaman.

Dated: ___11/23/2022_____.

_____
Dee Hodge

DECLARATION OF DEE HODGE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 4

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing document upon the following this 29th day of November, 2022, by the method indicated below:

Kelly H. Andersen, Esq.                    [X] CM/ECF
David W. Gadd, Esq.
STOVER GADD & ASSOC.
PO Box 1428
Twin Falls, ID 83303
Email: kha@magicvalleylaw.com
Email: dwg@magicvalleylaw.com


_____
SAM L. ANGELL

DECLARATION OF DEE HODGE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 5

# EXHIBIT A



City of Burley
1401 Overland Ave
Burley ID, 83318
(208) 878-2224

To:      Lindsey Yeaman
From:   Dee Hodge

Re:      NOTICE OF PROPOSED TERMINATION OF EMPLOYMENT

Date:   January 31, 2020

<u>CAUSE FOR ACTION</u>

Lindsey has not been doing her due diligence to maintain the pretreatment program.

For the pretreatment year of 2019 Lindsey did not do any non-domestic inspections i.e. restaurants, schools, oil and lube shops as indicated by the check sheet.

To my knowledge Lindsey has not yet published the 2019 violations and names of the industrial customers that have violated. I know that during 2019 Gem State Processing has had about 20 violations for ammonia limits that have not been addressed. I looked at the 2019 Industrial Customer Self testing spreadsheet where all the monthly data that is reported to Lindsey is accumulated. None of the customers data has been entered since the last part of November and some haven't been done since October reporting. Lindsey is supposed to have all this data into an annual report due to the IPDES website by the first of March and there is no indication she has even been working on it. The report from the DEQ PCI was for the year of 2018 and there are a lot of violations. There were 14 violations between the Enforcement Response Plan and the Permits. We were aware of some of the violations in the permits and had made that a priority to fix after the SUO was finalized and approved in November 2019. There are 13 areas of concerns with Permits and DEQ listed 4 areas of concern during their PCI inspections. One area of concern is that the inspection of Gem State Processing did not cover the entire facility. This is consistent with all the industrial inspections done in 2019 that Lindsey did not do a thorough inspection of the entire facilities. This pretreatment program has deteriorated for the last few years and Lindsey has not been doing the work that is required to keep this program up to standards.

Supporting information for this cause of action is contained in the following paragraphs.

In July of 2019 we received notification from DEQ that they would be doing a Pretreatment Compliance Inspection (PCI) on September 16th and all requested documents needed to be submitted to them before August 16th in order to inspect the files before the PCI. I approached Lindsay to verify she had received or seen the notice of the PCI she said she had. I told her this would be up to her to pass or fail as this has been her program and she said there were no worries that and that she was comfortable with it.

8/22    Lindsey and I had a discussion that she was not able to make the deadline DEQ had requested to get all the files they needed. I requested from DEQ that we get an extension and change the date of the PCI so we could get all the data they needed. Lindsey, Brynn and I had a conference call and the extension and change of PCI date was granted. New PCI dates are November 20 and 21.

9/16    I reached out to Brynn and asked if she had received all the requested information and she said it appeared that it was all submitted and if they needed more they would reach out. I told Lindsay that I wanted all the Industrial Inspections completed before the PCI except for the 5 DEQ reserved to do their inspection on. I also told Lindsay to get the restaurants inspected so everything was cleaned up before the PCI. NOTE: During Lindsey's performance evaluation I had given her the goal that I wanted all the inspections done by first of July).

11/22   Following the PCI Kerry from DEQ requested additional information from Lindsey. I asked Lindsey if she had received the email. She said she did and was going to get it all sent to DEQ.

12/11 I asked Lindsey if she got everything sent over to DEQ and asked if she had all the inspections done. She told me the industrial inspections were done. I asked about the restaurants she said she would try to get to them. I told her you aren't going to just try; you will get them done.

12/18 I sent an email to Kerry asking if she had received everything from Lindsey she requested. She told me she was still waiting on Lindsey to get her chain of custodies for the sampling the city did on the industries.

12/20 I told Lindsey that she needed to get the industrial flows to Katie before she could leave that afternoon. Lindsey never bothered to question me with issues but did send just the readings to Katie by email and said that she had a problem putting them on the spreadsheet I had made up. Katie email me asking why it was her place to put these readings on the spreadsheet.

12/23 Lindsey texted Dustin saying she would not be in. I put all the industrial flow readings on the spreadsheet and included the truck loads hauled by Fabri-Kal which Lindsey did not give to Katie. While looking for the truckload sheet I found an inspection form for Gem State on Lindsey's desk. This inspection form was not complete and never even had a date of the inspection nor a signature from a Gem State representative.

12/30 Lindsay drove into work and then texted Dustin saying she was in the parking lot but going back home sick. I sent email to Kerry at DEQ to see if she received the requested chain of custody from 12/11. Kerry replied saying she is still waiting for them. I had Chelsey look up the chain of custody and emailed them to Kerry. She replied that she received them.

1/6/2020 Lindsey brought her timesheet into my office and I told her we needed to have a chat. She said ok just a minute and left my office. I told Dustin to come in as a witness. When she came back into my office I shut the door and confronted her about why I am having to do her job. She acted like she didn't know what I meant so I explained having to send DEQ paperwork they requested back on 12/11. She acted like she was surprised and said she misunderstood. I told her if she had been checking her emails she would know they were still waiting for it.

1/13 I called Shawn Burton at High Desert Milk to verify that Lindsey had done the required annual inspection. He told me he couldn't be there the day Lindsey was there (which she should have rescheduled to meet with Shawn) and he told Michelle to accommodate Lindsey. Shawn told me he would verify with Michelle that the inspection took place.

1/15 Shawn called after lunch and said that he had a conversation with Michelle. He said Lindsey did not walk the premises to do an inspection. It was basically a meeting with Michelle, in Michelle's office, discussing the changes that were going to made with the new permitting process. There was no inspection, no exit interview,

no paperwork signed acknowledging an inspection. Michelle is not the proper person to discuss new permitting with.

1/15 Called Brian Wilson Gossner Foods no answer left message for him to call me. Brian called back we discussed the inspection done on 10/30. Brian remembered Lindsey being there but did not recall the date. He told me they spent more time discussing the permit application which he has not submitted yet. Lindsey told him to just do the best he can answering the questions and filling it out. He said that made him nervous because of the in depth information the application is asking for. I told him I would come over on 1/21 at 1:30 and go over it with him. As for the inspection he said they did not do a full walk through of the plant and he did not recall Lindsay having him sign anything such as an exit interview or an inspection form. He mentioned that he was a bit leery knowing that they have had a few violations that nothing has been done about. He said to be honest he has put the pretreatment on the back burner because he has not been constantly in touch with the pretreatment coordinator since Jean left.

1/23 I stopped into Pacific Ethanol to visit with Noah Hendricks about the inspection. He no longer works there but I met the new plant manager Zack Jensen. He called Noah on the phone and I asked about the inspection and how it went. He said they had some discussion about the new permit application and then walked around some of the plant. Lindsey also required them to purchase a composite sampler. Zack apologized for not getting the permit application sent in. He told me he had been trying to get ahold of Lindsey because he had several questions on how to fill it out but she hadn't never gotten back with him. I told him to hold off getting the application sent in and that I was going to see if we could get approval from DEQ to let them discharge by contract without being permitted. I told Zack I wasn't sure why she required them to purchase the sampler. He said he would have no problem especially if they don't have to be permitted.

1/24 I asked Lindsey if she had read DEQ report and she said she opened it on her phone but didn't get into reading it.

1/27 Had a discussion with Dustin about what Lindsey is working on. He said she is still working on the new permit. I told him she has been working on that since at least 3 months. I had proofread a version of it and gave it to her to verify the verbiage matches the new SUO and to put in the new local limits adopted in November. She should have had that done weeks ago.

Lindsey has been learning the pretreatment program since 2016 by helping with inspections and testing with Jean. Since 2017 Lindsey has been doing all the inspections and started learning the paperwork side of the pretreatment. In 2018 which is the year this PCI was conducted by DEQ, Lindsey was in complete control of the whole program. Jean retired in July of 2018. Lindsey claims that she is very new to the program which is a totally incorrect statement. For whatever reason Lindsey has not been doing her due diligence to maintain the pretreatment programs current status.

For the pretreatment year of 2019 Lindsey did not do any non-domestic inspections i.e. restaurants, schools, oil and lube shops as indicated by the check sheet

| Restaurants | Address | Inspection Date | NAICS Code |
|---|---|---|---|
| AC Drive in | 333 W Main | | 722211 |
| Burnt Lemon Grill | 2126 Overland | | 722211 |
| Dairy Queen | 2200 Overland | | 722211 |
| El Caporal | 610 N. Overland | | 722110 |
| Guadalajara | 2428 Overland | | 722110 |

| Name | Address | Inspection Date | NAICS Code |
|---|---|---|---|
| Kentucky Fried Chicken | 243 N Overland | | 722211 |
| La Hacienda | 139 W Main | | 722210 |
| Las Penitas | 1230 Hansen | | 722211 |
| Mcdonalds | 394 N. Overland | | 722211 |
| Morey's Steakhouse | 235 E 3rd St | | 722110 |
| Panda Express | 200 E 5th St N | | 722211 |
| Polo's Café | 1251 Overland | | 722110 |
| Pizza Hut | 2570 Overland | | 722110 |
| Shon Hing | 109 E Main | | 722110 |
| Smith's Deli | 937 E Main | | 722211 |
| Smith's Bakery | 937 E Main | | 722211 |
| Smith's Meat Dept | 937 E main | | 725 |
| Snake River Bowl | Minidoka | | 722211 |
| Stokes Deli | 1310 Pomerelle | | 722211 |
| Stokes Bakery | 1310 Pomerelle | | 722211 |
| Skokes Meak Dept | 1310 Pomerelle | | 722211 |
| Taco Bandito | 2301 Overland | | 722101 |
| Walmart Deli | 385 N Overland | | |

| <mark>Assisted Living</mark> | <mark>Address</mark> | Inspection Date | NAICS Code |
|---|---|---|---|
| City of Burley Senior Center | 2421 Overland | | |
| Hiland Estates | 2050 Hiland | | 624120 |
| Mini Cassia Care Center | 1729 Miller | | 623312 |
| Parkview | 2303 Parkview | | 623312 |
| Pomerelle Place | 1301 Bennett | | 623312 |
| | | | 623312 |

| <mark>Gas Stations</mark> | Address | Inspection Date | NAICS Code |
|---|---|---|---|
| Bobcat Corner | 95 NW Main | | 4477110 |
| Mr. Gas | 2101 Overland | | 4477110 |

| Schools | | Sept | |
|---|---|---|---|
| Burley High School | 2100 Park | Sept | 611210 |
| Burley Junior High | 700 W 16th | Sept | 611210 |
| Dworshak Elem | 102 E 19th | Sept | 611210 |
| John Evans Elem | | Sept | 611210 |
| White Pine Elem | 1900 Hiland | Sept | 611210 |
| Mountain View Elem | 333 W 27th | Sept | 611210 |

To my knowledge Lindsey has not yet published the 2019 violations and names of the industrial customers that have violated. I know that during 2019 Gem State Processing has had about 20 violations for ammonia limits that have not been addressed. I looked at the 2019 Industrial Customer Self testing spreadsheet where all the monthly data that is reported to Lindsey is accumulated. None of the customers data has been entered since the last part of November and some haven't been done since October reporting. Lindsey is supposed to have all this data into an annual report due to the IPDES website by the first of March and there is no indication she has even been working on it. The report from the DEQ PCI was for the year of 2018 and there are a lot of violations There were 14 violations between the Enforcement Response Plan and the Permits. We were aware of some of the violations in the permits and had made that a priority to fix after the SUO was finalized and approved in November 2019. There are 13 areas of concerns with Permits and DEQ listed 4 areas of concern during their PCI inspections. One area of concern is that the inspection of Gem State Processing did not cover the entire facility. This is consistent with all the industrial inspections done in 2019 that Lindsey did not do a thorough inspection of the entire facilities. This pretreatment program has deteriorated for the last few years and Lindsey has not done the work that is required to keep this program up to standards.

VIOLATION OF RULE

You have violated Rule 9 of the City of Burley Personnel Rules and Regulations.

Specifically, you have violated Rule 9: Section B:

3. Failure to meet work performance standards and requirements;

4. Willful or negligent disobedience of any job-related law, ordinance, City rule, or departmental regulation or any superior's lawful order.

5. Incompetence;

6. Inefficiency:

7. Inexcusable neglect of duties;

PROPOSED ACTION

It is proposed that your employment with the City of Burley be terminated.  You are being placed on suspension, with pay, pending the outcome of the opportunity to be heard, if you choose to be heard.

PROCESS

The disciplinary process is set forth in Rule 9 of "Personnel Rules and Regulations of The City of Burley." A copy of Rule 9 of "Personnel Rule and Regulations of The City of Burley" is attached.  Rule 9, Section D, provided you have an opportunity to be heard before the proposed suspension is imposed. Your opportunity to be heard is scheduled to take place on **February 10, at 8:30 a.m.** in the office of Carol Anderson at City Hall, Dee Hodge will hear your response. If you wish to be heard, **you must notify Dee Hodge within three (3) business days** of the date that you are served this notice. If notice of acceptance of the opportunity to be heard is not received by Dee Hodge within three (3) business days, the opportunity to be heard will be vacated and deemed waived. Failure to participate in this opportunity to be heard shall constitute a failure to exhaust administrative remedies under city policy.

ATTACHMENTS TO THIS NOTICE

Attached hereto is a copy of Rule 9 of the "Personnel Rules and regulations of The City of Burley."

**RULE 9: DISCIPLINARY ACTION**

**Section A: Definition**

**All City of Burley employees are "at will" employees and may be dismissed or terminated at any time without cause. Regular Employees may also be dismissed or terminated for cause. Rule 9 applies to discipline or termination for cause. This policy is not a progressive discipline policy. Employees may be terminated for cause for 1 violation of these rules.**

The following constitutes the appropriate procedures for taking disciplinary action against a regular employee for cause. Disciplinary action means an action taken by the City resulting in a letter of reprimand, dismissal, suspension without pay, reduction in salary step for a specified time period, probation or demotion of a regular employee. These procedures are directory in nature and minor variations of the processes set forth herein shall not affect the validity of any actions taken pursuant to this policy. For the purposes of Rule 9, the City Clerk, City Attorney, Library Director, City Administrator, and elected officers, are not a regular employees.

**Section B: Cause(s) of Action**

An employee with regular status with the City may be disciplined for cause. The following are declared to be causes for action although charges may be based upon causes other than those listed herein:

1. Omission or willful misrepresentation of a material fact or other fraud in securing employment including, but not limited to, the following:

   a. Falsification of application for work;

   b. False information regarding driver's license; or

   c. False information regarding professional licenses, credentials, or certificates;

2. Falsification of an official statement or document;

3. Failure to meet work performance standards and requirements;

4. Willful or negligent disobedience of any job-related law, ordinance, City rule, or departmental regulation or any superior's lawful order.

5. Incompetence;

6. Inefficiency;

7. Inexcusable neglect of duties;

8. Insubordination;

9. Dishonesty;

10. Improper use of drugs or alcohol including, but not limited to, the following:

    a. In possession of, under the influence of, alcohol beverages, while at work or in City work areas; or

    b. In possession, in use, under the influence of, or trafficking in habit-forming drugs and/or narcotics while at work or on City property. The term "drugs" means controlled substance as defined in Idaho Code.

11. Unexcused absence from duty, including, but not limited to, participation in unlawful strikes or other job actions, such as sick-ins or slowdowns;

12. Conviction of felony or conviction of a misdemeanor involving moral turpitude; a plea or verdict of guilty, or a conviction following a plea of nolo contendere, to charge a felony or any offense involving moral turpitude is deemed to be a conviction within the meaning this subsection;

13. Discourteous treatment of the public or other employees;

14. Working in an unsafe manner, not using safety equipment provided;

15. Misuse of City property or damage to City property resulting from misuse or negligence;

16. Inconsistent, incompatible, or conflicting employment activity or enterprise;

17. Violation of a department rule;

18. Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to the City;

19. Sexual harassment; **Zero Tolerance Policy.**  See Attachment "B"

20. Failure to comply with any requirements of the Department of Transportation, Drug Testing Regulations; and

21. Confirmed failure of any drug test.

22. Failure to submit to or show up for a drug test.

**Section C: General Provisions**

1. Except as otherwise provided, provisional, probationary relief employees and reserve firefighters may be dismissed, suspended, reduced in salary step for a specified time period, demoted or reprimanded without right to review or appeal unless otherwise required by law.

2. Disciplinary action may be taken against an employee by his or her department head, the city administrator and/or mayor. A department head should communicate with the city administrator before taking any disciplinary action unless immediate action is essential to avert harm to the City or the public. A department head should not take action against an employee

for demotion with a reduction in pay, suspension without pay or dismissal from employment unless the department head has first informed the city attorney of the proposed action. For the purposes of this Rule 9, designated officials are those designated by the mayor. The mayor may also designate himself.

3. The Burley Firefighters have entered into the IAF AFL-CIO Burley Firefighters Local #3308 Collective Bargaining Agreement which expires September 30, 2020. The provisions of said Agreement, and any Agreement replacing said agreement in the future, control over any conflicting provisions of these Personnel Rules and regulations. The provisions of this Rule 9 apply to the Burley Firefighters as described in the Agreement.

4. For any other employee employed by written contract, the terms of the written contract shall control over any conflicting provisions of this Rule 9.  If a procedure is provided in the written contract for disciplinary action or termination of employment, then the procedures required in this Rule 9 do not apply to contracted employees unless referenced in the written contract.

5. Any dismissal procedures set forth in the Idaho Code for elected officials, City Clerk, City Attorney, Library Director and City Administrator shall control over the provisions of this Rule 9. If a procedure is provided in the Idaho Code for termination of employment, then the procedures for termination of employment for cause set forth in this Rule 9 will not be required for termination for cause of the elected or appointed employee.

6. Termination of employment of returning veterans is subject to the provisions of The Uniformed Services Employment and Reemployment Rights Act and other applicable provisions of Idaho State law.

**Section D: Opportunity to be Heard Concerning Proposed Discipline**

When it is proposed that disciplinary action for cause be taken, the personnel policy of the City establishes the right of regular employees (but not reserve firefighters, independent contractors, probationary employees, provisional employees, seasonal employees, temporary employees or legal counsel for the City) to be heard in the event of contemplated demotion with a reduction in pay, suspension without pay or dismissal from employment. The opportunity to be heard is designed to be informal allowing the employee to discuss with his/her department head, the City Administrator, mayor, or other designated official (at the employer's discretion) the facts surrounding the proposed disciplinary action and to provide any additional documentation that the employee believes would be helpful in explaining his/her actions, attitude or behavior.

The following steps should be followed by the department head or other official initiating the proposed action;

1. The employee shall be provided with a written notice of the reasons for the proposed personnel action that would affect him/her, along with an explanation of the City's supporting information and the proposed personnel action. The written notice may be personally served or mailed to the employees last known address by United States certified mail.

2. The written notice will include a date, time and place for the employee to be heard to discuss the proposed personnel action.

3. The notice should state whether the employee is being placed on suspension pending the outcome of the opportunity to be heard, and whether any such suspension will be with or without pay.

4. If the employee is unable to participate in the scheduled opportunity to be heard, s/he may request an alternate date and time. Any approved alternate date that falls after the scheduled date and time may be without pay, if any has been provided by the City.

5. The employee must notify his/her department head or other official initiating the propose action within three (3) business days of the date that the notice was served or delivered that he/she desires to be heard as scheduled in order to discuss the reasons for the proposed personnel action. If notice of acceptance of the opportunity to be heard is not received within three business days, the opportunity to be heard will be vacated and deemed waived.

6. As an alternative to an opportunity to be heard, the employee may choose to provide a written response to the basis for the proposed personnel action. This written response must be submitted no later than the scheduled date and time initially set for the opportunity to be heard.

7. The opportunity to be heard, if chosen, will last no longer than one hour, unless otherwise approved by the department head or other official initiating the proposed action, and will be limited to discussion of the issues contained in the notices and to any allegations by the employee of unlawful discrimination in employment. The employee will be permitted to present his/her position with respect to each matter identified in the notice and/or offer information in mitigation of any disciplinary action. The employee shall not be entitled to a formal hearing with examination of witnesses, but he/she may present his or her own oral statements and written statements of any witness and other documentary material.

8. The employee will not be prohibited from having an attorney assist him/her at the employee's own expense. The employer may also have assistance of an attorney.

9. The employer may ask the employee questions for clarification purposes should that be necessary during the discussion.

10. The employee shall not have the opportunity to question the supervisor or department head, unless the supervisor or department head introduces a new basis for the personnel action during the discussion.

11. The Idaho Rules of Evidence shall not apply to the opportunity to be heard.

12. Unlawful discrimination allegations <u>must</u> be raised during this process, or they will be deemed waived by the employee.

13. The employer will render a written decision after considering employee's responses, if any, to the allegations set out in the notice. The written decision will:
    a. Uphold the proposed disciplinary action;
    b. Notify the employee that the prosed disciplinary action will not be imposed;
    c. Impose a lesser disciplinary action; or
    d. Amend the charges. In the event the department head substantively amends the intended charges or proposes an increased punishment, he shall give another notice as provided in paragraph 1 of this Section D.

14. FAILURE TO PARTICIPATE IN THIS OPPORTUNITY TO BE HEARD ALLOWED HEREIN SHALL CONSTITUTE A FAILURE TO EXHAUST ADMINISTRATITVE REMEDIES UNDER THIS POLICY.

**Section E: Appeal of Decision Imposing Demotion with a Reduction in Pay, Suspension Without pay or Dismissal from Employment**

An employee who participated in a pre-disciplinary hearing as described in Section D above who is not satisfied with the outcome of said hearing, may file a written appeal of the decision. The written appeal must be filed with the City Administrator within seven (7) calendar days after receiving the decision of discipline. The written appeal shall contain an answer to each charge or allegation made by the employer. The appeal shall be heard by the city administrator or other designated official.

The following steps should be followed by the city administrator or other designated official;

1. The employee shall be provided with a written notice of the date time and place of the hearing. The hearing may be postponed by the hearing official upon a showing of good cause by either party. The written notice may be personally served or mailed to the employee's last known address by United States certified mail.

2. If the employee fails to appear at the appeal hearing the hearing will be vacated and deemed waived.

3. The employee shall have the right to be represented by an attorney and to present evidentiary facts. The hearing official may at any time exclude any person who may be a witness in the case under consideration, with the exception of the employee and the departmental representative.

4. The hearing shall be informal and the hearing official shall not be bound by the rules of evidence governing trial procedure in State or Federal Courts. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions. Hearsay evidence may be used for the purpose of supplementing other evidence; however, it shall not be deemed sufficient in itself to support a finding unless it would be admissible over objection in civil actions.

5. The rules of privilege shall be effective to the extent that they are otherwise required by statute to be recognized at the hearing, and irrelevant and unduly repetitious evidence shall be excluded.

6. In arriving at a decision, the hearing official may consider any prior City disciplinary action including any relevant letters of reprimand filed with the Personnel Officer. The hearing Official shall make an official decision either affirming, modifying or revoking the previous decision. The decision shall contain findings of fact which may be stated in the language of the pleadings or by reference thereto. A copy of the written decision of the hearing official shall be served on the employee by personal service or by certified U.S. mail.

7. FAILURE TO PARTICIPATE IN THIS APPEAL HEARING ALLOWED HEREIN SHALL CONSTITUTE A FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES UNDER THIS POLICY.

**Section F: Opportunity to be Heard – Assertions of Unlawful Discrimination and "Name-Clearing Hearing"**

This policy establishes an opportunity to be heard in the event of a discharge or demotion with a reduction in pay; and 1) the employee asserts that the discharge or demotion is actually the consequence of alleged unlawful discrimination by the City or 2) if the allegation involves dishonesty, immorality or criminal misconduct that would entitle the employee to a "name-clearing hearing." *Cox v. Roskelley,* 359 F. 3d 1105 (9th Cir. 2004)."

Unlawful discrimination addresses actions that are alleged to involve decisions based upon age, sex, race, religion, national origin or disability that is not a bona fide occupational qualification. Issues of job performance or employee attitude are not the proper subject of this opportunity to be heard. The City does not condone discrimination on the basis of the foregoing unlawful categories. **FAILURE TO SEEK AN OPPORTUNITY TO BE HEARD PURSUANT TO THIS POLICY SHALL CONSTITUTE A FAILURE TO EXHAUST REMEDIES UNDER THIS POLICY.**  Any employee entitled to an opportunity to be heard as a result of a disciplinary action that concerns job performance or behavior must raise allegations of unlawful discrimination or the need for a "name-clearing hearing" in the course of that disciplinary process, with such issues to be addressed as provided by this section of the policy.

When the employee asserts an allegation of unlawful discrimination or the need for a "name-clearing hearing," the elements of procedure to be followed and undertaken at the direction of the City Administrator or other designated official, unless the name clearing hearing is combined with the appeal hearing described above or unless waived by the employee, are as follows:

1. The employee may, within fourteen (14) days of his/her termination or demotion, submit to the City Administrator a written allegation of unlawful discrimination or a request for a "name-clearing hearing," stating with particularity the basis for the requested opportunity to be heard. Complaints filed untimely or failing to state a particular, legally recognized basis for this opportunity will not be heard.

2. The opportunity to be heard with regard to the employee's allegations shall be provided promptly after receipt of a properly documented request.

3. An employee alleging unlawful discrimination or entitlement to a "name clearing hearing" shall be allowed one (1) hour, unless otherwise approved by the designated official, to meet and discuss the allegations with the City Administrator or other designated official.

4. There shall be a record maintained, including a tape recording, of the discussion that constitutes the opportunity to be heard.

5. The employee's supervisor, to the extent of his/her knowledge, may be required to provide a brief, written statement in response to the particular allegation of discrimination or "name-clearing" request. The designated official may request that the employee's supervisor and other witnesses participate in the discussion.

6. The employee will not be prohibited from having an attorney assist him/her at the employee's own expense.

7. The employee will be allowed to present oral testimony (or provide written statements) concerning evidence upon which the alleged discrimination or "name-clearing" is based.

8. The official may ask the employee's witness's questions for clarification purposes should that be necessary during the discussion process.

9. The employee shall <u>not</u> have the opportunity to question any participants during this process, but may submit written questions for the official to consider.

10. The Idaho Rules of Evidence do not apply to this opportunity to be heard.

After the conclusion of the discussion, the City Administrator or other designated official will be considered the information submitted and such other information as might be in the city's records to arrive at a decision concerning the employee's allegations. Said decision shall set forth the reasons for the determination in writing. If as a result of this opportunity to be heard, the City Administrator or other designated official finds fault with the basis for the City's action, remedial action may be prescribed, including restoration of employment and payment of back pay.

**Section G: Letter of Reprimand**

A Letter of Reprimand is considered to be a disciplinary action. Any employee receiving a Letter of Reprimand may respond in writing to the Letter of Reprimand within thirty (30) calendar days from the date that the Letter of Reprimand is received. The employee's written response shall be attached to the Letter of Reprimand and placed in the employee's personnel file. Sections D and E of this Rule shall not apply to letters of reprimand. The Letter of Reprimand shall not be appealable.

**Section H: Disciplinary Action – Immediate Suspension**

The department head may suspend an employee without prior notice if immediate suspension is essential to avert harm to the City or to the public. In such case, if the suspension is without pay, the notice of suspension shall inform the employee of his or her right to be heard and appeal that shall follow the procedures outlined in Section D and E of this Rule.

# EXHIBIT B



**City of Burley**
**1401 Overland Ave**
Burley ID, 83318
(208) 878-2224

To:     Lindsey Yeaman
From:  Dee Hodge

Re:     NOTICE OF TERMINATION OF EMPLOYMENT

Date:   February 13, 2020

An informal hearing was held from 8:30 a.m. until 9:55 a.m. at Burley City Hall to listen to your response to the notice of proposed termination dated January 31, 2020.  The hearing was held in Carol Anderson's office.  In attendance were you, Dan Pherigo, Carol Anderson and myself.

After hearing and reviewing your responses to the cause of action, there were no reasons given by you that would reverse the proposal of termination of employment.  Thus, my proposal of termination of employment stands.  Notice is hereby given that your employment with the City of Burley is terminated for cause.  The cause for termination of employment is set forth in the Notice of Proposed Termination of Employment that was dated January 30, 2020.

VIOLATION OF RULE

You have violated Rule 9 of the City of Burley Personnel Rules and Regulations.

Specifically, I find that by your actions and omissions described in the Notice of Proposed Termination, you have violated the following causes of action described in Rule 9: Section B:

3. Failure to meet work performance standards and requirements;

4. Willful or negligent disobedience of any job-related law, ordinance, City rule, or departmental regulation or any superior's lawful order.

5. Incompetence;

6. Inefficiency:

7. Inexcusable neglect of duties;

If you give proper notification as described in Rule 9 Section E of the PERSONNEL RULES AND REGULATIONS of The City of Burley, you have the opportunity to appeal.

Please Contact Carol Anderson concerning COBRA coverage and any wages you may be owed.

Sincerely,

Dee Hodge